Decided 1 May, 1906.

## ENTERPRISE HOTEL CO. v. BOOK.

85 Pac. 333.

PLEADING—AVAILABLE ERROR—ADMISSIONS.

1. Error cannot be predicated on rulings of a judge following admissions in the pleadings, as, for instance, in admitting as evidence a contract on which the plaintiff counts and which the defendant admits having executed.

PRINCIPAL AND SURETY—PREMATURE PAYMENTS TO PRINCIPAL—DISCHARGE OF SURETY—WAIVER BY SURETY.

2. Where a security reserved in a building contract for the benefit of the sureties on the builder's bond is impaired by a premature payment to the contractor, the surety is discharged to the extent at least of the amount so paid unless the payment was made with the knowledge and consent of the surety; but this defense may be waived, and a stipulation in the contract that payments made at times or in a manner other than as stipulated in the contract shall in no wise operate to release the sureties from liability, amounts to a waiver of that defense by both the principal and the sureties: *Wehrung v. Denham*, 42 Or. 386, distinguished.

PRINCIPAL AND SURETY—EFFECT ON RIGHTS OF SURETIES OF ALTERING TERMS OF BUILDING CONTRACT.

3. A contract for the construction of a building having provided that if the owner should, during the progress of the work, request in writing any alterations, the same should be made and should not make void the agreement, but the value thereof should be added to or deducted from the contract price, and the bond having provided that any departure from the specifications, or alterations of the same should not make void the bond, the act of the contractor in making changes without requiring the requests therefor to be in writing, does not release either the contractor or his sureties. The provision requiring the requests for changes to be in writing was for the protection of the contractor, and he could waive it if he desired, thereby waiving it for the sureties also.

CONSTRUCTION OF BUILDING CONTRACT—PAYMENTS.

4. A provision waiving the exact performance of the terms of a building contract as to payments applies to the payment for extras as well as for the original work.

From Wallowa: ROBERT EAKIN, Judge.

Statement by MR. CHIEF JUSTICE BEAN.

This is an action by the Enterprise Hotel Co. against Peter Book on a builder's bond. The complaint alleges that on July 29, 1902, the defendant Book contracted in writing with the plaintiff corporation to erect and construct for it by January 1, 1903, a two-story and basement stone hotel in the City of Enterprise, in accordance with certain plans and specifications, for the sum of $7,366, and to keep the building and premises free from liens for labor or material; that as security for the performance of the contract, Book, as principal, and the defend-

ants Hallgarth and Bader, as sureties, executed and delivered to plaintiff the following bond or undertaking:

"Know all Men by These Presents, that Peter Book, of Elgin, Oregon, as principal, and Chas. Hallgarth and H. Bader, sureties, are held and firmly bound unto the Enterprise Hotel Company in the penal sum of seven thousand, three hundred and sixty-six dollars, for the payment of which in United States gold coin, we hereby bind ourselves, our heirs, administrators and executors firmly by these presents.

The Condition of the Foregoing Obligation is such that Whereas, said Peter Book and the said Enterprise Hotel Company have just entered into a contract whereby the said Peter Book has agreed and undertaken to furnish all of the labor and materials of every kind, and build and complete for the said Enterprise Hotel Company on or before the 1st day of January, 1903, a two-story and basement hotel building in the City of Enterprise, Wallowa County, State of Oregon, according to certain plans and drafts and explanations and the drawings and specifications prepared by Architect C. R. Thornton, which said plans, drafts, drawings and specifications are verified by the signatures of the parties to said contract and are by reference made a part of said contract; and Whereas, the said Peter Book has agreed to give security for the building and completion of said building according to the said contract therefor; and Whereas, the said Peter Book has agreed to save the said Enterprise Hotel Company free from all liens which may be filed or which may be enforced on account of materials furnished or workmanship employed or work done on or about said building and to pay for all materials furnished or work done, and to save the said Enterprise Hotel Company harmless from the payment of such liens or claims of lien:

Now, Therefore, if the said Peter Book shall furnish all of the materials and labor and build, construct and complete said building in all respects according to said contract and the plans and specifications referred to therein, and in all other respects comply with said contract, and will pay for all material and labor employed on said building or in its construction, and will not permit any person or persons to obtain any lien or liens upon said building for labor or materials furnished or to be furnished for said building and will save the said Enterprise Hotel Company harmless from any and all costs, charges, damages or attorney's fees from any such lien or liens or claims for liens, then this bond shall be null and void, but otherwise to be and remain in full force and effect and be liable to enforcement to the extent of all such costs, charges, damages and expense of

every kind which may be sustained by the said Enterprise Hotel Company by reason of the failure of the said Peter Book to comply with the terms of the said contract and this obligation.

It is Expressly Understood and Agreed that any departure from the plans, drawings and specifications, or if any additions to, or alterations of, or any omissions be made in said building, the same shall in no way affect or make void this undertaking, but the costs of the same shall be added to or deducted from the amount of said contract price of said building by a fair and reasonable valuation.

And it is Expressly Further Agreed and Understood that any extension of time in which to complete said building, or should any changes or deviations be made from said contract in respect to the payments therein stipulated to be made, or should payments be made at any other time or manner than therein stipulated, the same shall in no wise affect the validity of this obligation or release the sureties hereto from liability.

It is the intention of the parties to this undertaking to provide that any changes or alterations in the construction of said building or extension of time in which to construct the same, or change in the time or manner of making payment, shall not in any wise release the sureties hereto from their obligations on this bond.

This obligtaion and the contract referred to, which is hereto annexed, and made a part of this obligation, are to be construed to be one transaction and one obligation.

Witness our hands and seals in duplicate this 29th day of July, 1902.

| Executed in the presence of | Peter Book. | [Seal.] |
| J. N. Hazelwood. | H. Bader. | [Seal.] |
| N. C. McLeod. | Chas. Hallgarth. | [Seal.]" |

It is further alleged that Book did not complete his contract until July 1, 1903, by reason of which plaintiff was damaged in the sum of $300, and that he suffered and permitted liens for labor and material amounting to $2,969.94 to be filed against the building, which the plaintiff was compelled to, and did, pay. Judgment was demanded against the defendant Book and his bondsmen for the amount above set out, less $728.97 retained by the plaintiff from the contract price.

The defendant sureties answered, denying all the material allegations of the complaint, and for an affirmative defense setting up the contract between the plaintiff and the defendant,

and pleading (1) that the delay in the completion of the building was due to the imperfect plans and specifications and the conduct of the plaintiff, and not the defendant Book; and (2) that the defendant sureties have been released and discharged from all liability under their contract because (a) payments were made by the plaintiff to Book at times and in amounts different from that stipulated in the contract; and (b) that changes and alterations were made in the work without the knowledge or consent of the sureties, which greatly increased their liability. A reply put in issue the new matter in the answer, and a trial resulted in a verdict and judgment in favor of plaintiff, from which the defendants appeal.                          AFFIRMED.

For appellants there was a brief over the names of *Neil McLeod, F. S. Ivanhoe* and *Crawford & Crawford,* with an oral argument by *Mr. Francis Swift Ivanhoe* and *Mr. Thomas Harrison Crawford.*

For respondent there was a brief over the names of *Daniel Webster Sheahan* and *DePue & Cook,* with an oral argument by *Mr. Sheahan.*

MR. CHIEF JUSTICE BEAN delivered the opinion.

There are numerous assignments of error, but they may all be grouped under three or four heads.

1. It is contended that the court erred in admitting in evidence the contract between the plaintiff and Book, and in refusing to direct a verdict for the defendants on account of a failure of proof.  The contract in question and the bond heretofore set out are on one sheet of paper and were made up from printed forms. In the contract proper the contracting parties are referred to as the party of the first part and the party of the second part, and the names have been so transposed that, if the agreement is read literally and without reference to its context, it would appear as if Book owned the building and plaintiff was the contractor therefor.  When the entire contract and bond are read together, it is apparent that the confusion grows out of a clerical error and the contract is in effect as alleged in the complaint. But, however that may be, the question is immaterial here

because the answer of the defendants sets up affirmatively the making of the contract, its terms and conditions, and pleads breaches·thereof as a defense to this action, so that upon the pleadings there is no issue on that matter.

2. The contract provides that certain payments should be made to Book as the work progressed, and that $1,000 should be paid to him on the certificate of the architect that the building had been completed according to the contract and had been accepted by the plaintiff. The building was not completed until July 1, 1903, and about that time the plaintiff paid $1,000 to Book. The defendant sureties contend that they were released by reason thereof, because such payment was made without adjusting the claim for damages growing out of the delay in the completion of the building, and because there was at the time a mechanic's lien on the same for a small amount. The argument is that the reserve payments stipulated in the contract were for the benefit of the sureties as well as that of the owner, and that the payment in question operated to impair this reserve to the injury and prejudice of the defendants.

It is a settled rule of law that where a security reserved in a building contract for the benefit of the sureties on the builder's bond is lessened, impaired, or destroyed by a premature payment to the, contractors, the sureties will be released and discharged to the extent at least of the amount so paid: *Cochran* v. *Baker,* 34 Or. 555 (52 Pac. 520, 56 Pac. 641); *Hand Mfg. Co.* v. *Marks,* 36 Or. 523 (52 Pac. 512, 53 Pac. 1072, 59 Pac. 549); *Wehrung* v. *Denham,* 42 Or. 386 (71 Pac. 133). But this doctrine can have no application where such payment is made with the knowledge and by the consent of the sureties: 27 Am. & Eng. Enc. Law (2 ed.), 495; *Brown Iron Co.* v. *Templeman,* 30 Tex. Civ. App. 50 (69 S. W. 249); *Smith* v. *Molleson,* 148 N. Y. 241 (42 N. E. 669). Now, in this case, the bond contains a provision that payments made at times or in a manner other than as stipulated in the contract shall in no wise affect the validity of the obligation or operate to release the sureties from liability thereon. It is plain that under this provision the sureties cannot complain because all payments were

not made at the time or in the manner stipulated in the contract, as they had waived that defense in advance.

3. The contract provides that if the plaintiff should at any time during the progress of the work request in writing any additions or alterations to the building, the same should be made and should in no way affect or make void the agreement, but the value thereof should be added to or deducted from the contract price, and the bond provides that "any departure from the plans, drawings and specifications, or if any additions to or alterations of, or any omissions be made in said building, the same shall in no way affect or make void this undertaking," and that "it is the intention of the parties to this undertaking to provide that any changes or alterations in the construction of said building * * shall not in any wise release the sureties hereto from their obligations on this bond." It is claimed that because certain changes and alterations were made in the building as the work progressed, such as increasing the height of the basement walls, the thickness of the exterior walls, the putting in of dormer windows and some work in connection therewith, a change in the painting specifications and the doubling of the first and second-story floors, were made without having been first requested in writing by the plaintiff, the sureties are discharged and released from liability.

It is an elementary rule of law that a surety can insist by his contract that he will not be bound except upon his own terms, and therefore, any alterations or additions in a building contract that materially change, vary, or increase the risk assumed by the sureties will release them from liability unless made by their consent, and there are authorities holding that where the contract provides that before the alterations or additions are made the value thereof shall be agreed upon in writing by the owner and the contractor that alterations or changes made by verbal agreement release the sureties: *Killoren* v. *Meehan*, 55 Mo. App. 427; *United States* v. *Freel*, 186 U. S. 309 (22 Sup. Ct. 875, 46 L. Ed. 1177). But there is no provision in the contract under consideration that the value of the alterations or additions should be agreed upon by the owner and contractor in advance. The

stipulation is that the same shall be added to or deducted from the amount of the contract price by a fair and reasonable valuation, and that if any dispute should arise concerning the value of any work or changes, the same should be determined by arbitration, and hence the authorities referred to are not in point here, and the liabilities of sureties are not affected by alterations and changes if consented to by them: *McLennan* v. *Wellington,* 48 Kan. 756 (30 Pac. 183) ; *Hayden* v. *Cook,* 34 Neb. 670 (52 N. W. 165) ; *De Mattos* v. *Jordan,* 15 Wash. 378 (46 Pac. 402) ; *Kretschmar* v. *Bruss,* 108 Wis. 396 (84 N. W. 429) ; *Hedrick* v. *Robbins,* 30 Ind. App. 595 (66 N. E. 704). The provision in the contract that 'if plaintiff should at any time during the progress of the work request in writing any alterations or additions the same should be made, was for the benefit of the contractor, and could be waived by him. If he saw proper to make any changes or alterations in the work when requested, without first requiring such request to be placed in writing, it would, it seems to us, constitute no defense for the sureties, nor release them from their obligations.

4. Again, it is contended that the value of any alterations or additions became a part of the contract price, and the amount thereof should have been retained by the plaintiff until the final payment. It is provided that the contract price shall be paid to Book in installments as the work progressed, and it is insisted that because the extra work was paid for from time to time as it was performed, that such payments were premature and operated to discharge the sureties, but, as we have already seen, the bond itself expressly provides that payments made at any other time or in any other manner than as stipulated, should in no wise affect the obligation of the sureties. It necessarily follows, therefore, that even if the defendants are correct in their interpretation of the contract, and that the payments for extra work should not have been made at the time the work was performed, nor until final payment on the building, the premature payment thereof did not release the sureties, or relieve them from liability.

This, we think, covers substantially all the questions raised on this appeal, and there being no error in the record, the judgment is affirmed.                                   AFFIRMED.