## MASSACHUSETTS BONDING AND INSURANCE COMPANY *v.* REALTY TRUST COMPANY.

1. Relatively to a surety on a contractor's indemnity bond, the owner of a building is not bound to withhold payments to the contractor, as stipulated and agreed in the contract, on the ground that the contractor is in default with the materialmen. Under the contract in this case, the contractor was to be paid in monthly installments, and the amount of the installment was to be fixed by the value of the materials and labor which entered into the construction of the building during the previous month, plus the agreed commission.

2. Where a contractor gave to the owner of a building which he was to construct a bond with surety, conditioned for the faithful performance of his contract, and the owner brings an equitable suit against the contractor and his surety for breach of the bond, wherein it is alleged that numerous subcontractors and materialmen are claiming liens against the building, which liens are disputed, but, if established, will

be valid liens against the property, and• the claimants of the liens are made parties, and a reference of the claims of lien to a master is prayed, and judgment is asked against the contractor and his surety for the amount of such claims found to be valid and due, such suit is maintainable without prior payment of the liens by the owner, on the ground of avoidance of multiplicity of suits and circuity of action.

3. Such a suit as is described in the preceding headnote is not multifarious for misjoinder of parties or causes of action.

4. The surety on the bond of a contractor for the faithful performance of a building contract is not released because at the time of the payment of the last installment of the contract price, pursuant to the terms of the contract, the work is incomplete and there are unpaid subcontractors and materialmen.

FEBRUARY 15, 1912. REHEARING DENIED FEBRUARY 29, 1912.

Action upon bond. Before Judge Ellis. Fulton superior court. January 21, 1911.

*Dodd & Dodd,* for plaintiff in error. *Wimbish & Ellis,* contra.

EVANS, P. J. The Realty Trust Company contracted with H. L. Stevens to construct an office and theatre building in the city of Atlanta. By the terms of the contract Stevens was to furnish all labor and material and to construct the building in conformity with the plans and specifications of an architect, at actual cost plus ten per cent., with a guaranty that the cost of the work should not exceed $160,000, exclusive of his commissions and of certain extras referred to in the contract. The contract stipulated that Stevens was to be "paid for the execution of the work covered by this contract, and such other work as may be ordered as hereinafter provided, actual cost, plus ten per cent., to be paid as follows: On the first day of each month the party of the first part shall be reimbursed for all expenditures incurred in connection with this work for the month previous, plus five per cent. The remaining five per cent. to be due and payable within ten days after the completion and acceptance of the work by the architect. . . In consideration of the payments to be made as herein provided, the party of the first part guarantees that the actual cost of the work to be performed by the party of the first part under this contract shall not exceed the sum of one hundred and sixty thousand ($160,000) dollars, not including the ten per cent. hereinafter mentioned; and the party of the first part shall, if the cost exceeds this sum, complete said building as herein provided at his own expense." Pursuant to his agreement in the contract, Stevens gave to the Realty Company a bond in the sum of $50,000, with the Massachusetts

Bonding and Insurance Company as surety, conditioned for the faithful performance of his contract. This bond contained the following provision: "A substantial compliance with the contract herein referred to, on the part of the obligee herein, shall be a condition precedent to its right of recovery hereunder. And the obligee shall take from contractor, on the 1st day of each month, an itemized sworn statement of the amount and cost of labor employed and the amount and cost of material used or delivered to the contractor on the job for use in the building, and the obligee herein shall, at the same time, furnish the surety hereon with a true copy of such statement, by mailing the same to Fair Dodd, Atlanta, Georgia, its General Agent." The building was not completed by the contractor, and certain subcontractors and materialmen were claiming liens against the building, when the realty company filed its equitable petition against Stevens, the contractor, his surety, and the different claimants of liens. The petition alleged: that Stevens entered upon his contract; that various monthly payments were made upon the architect's certificates during the progress of the work, according to the terms of the contract; that the last certificate of the architect included a sum which, added to the previous payments, exceeded the guaranteed contract price; that the plaintiff paid on this certificate $13,748.71, which completed the payment of the full contract price; that the plaintiff took from the contractor, on the 1st day of each month, an itemized sworn statement of the amount and cost of labor employed, and the amount of material used, and furnished a true copy of it to the surety company as provided in the bond; that Stevens, though having received the entire contract price, has abandoned his contract, and the plaintiff has undertaken to complete the building, and a stated sum will be required for this purpose; that twenty-five named subcontractors and materialmen are claiming liens for work done on the building and material furnished, and though plaintiff denies its property is liable to these liens, yet it maintains that the contractor and surety on his bond are liable for such sums as it might be required to pay on account of their claims of lien, if found to be valid liens against the plaintiff's property. A reference was prayed of these claims of lien to a master, to report as to the existence and amount of each, and the liability of the plaintiff's property therefor. Judgment was prayed against the contractor and his surety for such damages

as accrued from the breach of the bond. General and special demurrers by the surety were overruled, and it excepted.

The subject-matter of the contract between Stevens and the realty company was the construction of a building upon stipulated terms. The contract provides that Stevens is to furnish all the labor and material, and construct the building according to the plans and specifications, at a cost not to exceed a guaranteed sum. The contract of the surety is that it is liable to the realty company to the extent of $50,000, unless "the said Stevens faithfully, well, and truly perform his said contract in erecting and completing said building according to all its terms and provisions and the provisions of the plans and specifications made a part of said contract." In effect the surety guarantees that Stevens will complete the building according to the contract, that is, he will deliver the completed building to its owner for the contract price. The allegation is that Stevens has abandoned his contract without completing the building, that certain materialmen are claiming liens in a stated amount, and that a certain sum will be required to complete the building. According to the allegations of the petition, the contractor has breached the contract, and the realty company is entitled to sue.

The demurrer challenges the right of the obligee to recover anything on account of liens for material used in the construction of the building. Relatively to a surety on a contractor's bond for the faithful performance of the building contract, the owner of the building is not bound to withhold the payments made to the contractor, where such payments are stipulated for and agreed upon in the contract, on the ground that the contractor is in default with the materialmen. *Thomason* v. *Keeney,* 8 *Ga. App.* 854 (70 S. E. 220); Hayden v. Cook, 34 Neb. 670 (52 N. W. 165). It is contended that the provision that "on the 1st day of each month the party of the first part shall be reimbursed for all expenditures incurred in connection with this work for the month previous, plus 5 per cent., the remaining 5 per cent. to be due and payable within ten days after the completion and acceptance of the work by the architect," contemplates that only such expenditures as were actually paid for by the contractor should be included in the monthly installments. We think this construction is too strained, when we consider the general scope and purpose of the bond. The contract reflects the intention of the parties that the contractor

was to be paid in monthly installments, and the amount of the installment was to be fixed by the value of the materials and labor which entered into the construction of the building during the previous month, plus the agreed commission. Indeed, the provision in the bond that the obligee shall take from the contractor, on the 1st day of each month, an itemized statement of the amount and cost of labor and of the material used or delivered to the contractor on the job for use in the building, and furnish the surety with a true copy of it, indicates an appreciation by the surety that there may be a source of liability from liens for unpaid material; and it exacted monthly notices of the extent of the material and labor used, that it might be advised of the facts, so that it might take such steps as it should deem proper to avoid liability from this source.

Again, it is insisted that the obligee can not recover the amount of these liens until it has discharged them by payment. It is true that in a common-law action for a breach of contract of indemnity the damages are usually limited to actual loss. But this action is equitable in its nature, and calls for the application of equitable principles. It is alleged that numerous subcontractors and materialmen, twenty-five in number, are claiming liens to the aggregate amount of $48,768 upon the building and real estate upon which it is located, and, while denying liability to these several subcontractors and materialmen, they are made parties to the petition, and it is prayed that their claims of lien be referred to a master who shall report the amounts due to them by the contractor, and to what extent, if any, they are liens against the building and real estate of the obligee. Unless this course is permissible, the owner of the building would be obliged to pay them at his risk, if paid without foreclosure, or await the pleasure of the materialmen to assert their liens within the statute of limitations, in as many suits as there are claims of lien, before he could have recourse on the bond. Such a requirement would result in vexatious delays, and a multiplicity of suits, to prevent which equity will take cognizance and settle all the matters in one proceeding. By bringing the lienors into the case their rights will be fixed as against the plaintiff, and at the same time the extent of liability of the surety and its principal will be fixed. The joining of the lienors as defendants does not render the petition multifarious. Wilson *v.*

Stillwell, 9 Ohio St. 467 (75 Am. D. 477). Our ruling in this respect does not in any way militate with the ruling in *McGarry* v. *Seiz*, 129 *Ga.* 296 (58 S. E. 856). The bond in that case was essentially different from the one in the case at bar.

After receiving the payment of the last installment of $13,748.71, it is alleged that Stevens abandoned his work, leaving it in an incomplete state, and did not apply this payment to subcontractors for material and labor. The surety set up in its demurrer that this last payment under these circumstances operated to discharge it from liability. The payments were made by the plaintiff to the contractor according to the stipulations in the contract, and the surety can not claim as a release any act done by the plaintiff authorized by the contract. Duluth *v.* Heney, 43 Minn. 155 (45 N. W. 7); Leavel *v.* Porter, 52 Mo. App. 632.

The grounds of the demurrer are numerous, but we do not think they are meritorious. The foregoing principles which we have ruled control the essential points made by the demurrer.

*Judgment affirmed. All the Justices concur, except Hill, J., not presiding.*