## BOONE v. MALONEY.

No. 22476.   April 9, 1935.

Ferguson & Semple, for plaintiff in error.

Utterback & Stinson and Priscilla W. Utterback, for defendant in error.

PER CURIAM. This is an appeal from the district court of Bryan county by the plaintiff in error seeking to reverse a judgment of that court in favor of the defendant in error, and for convenience the parties will be referred to as they appeared in the lower court. The plaintiff filed his action alleging that he and the defendant had entered into a contract by which defendant was to furnish the labor and material in the remodeling and repair of the plaintiff's house, for which the plaintiff was to pay and did pay to the defendant the sum of $567.36; that the defendant has failed and refused to pay for the material used and that a lien statement has been filed by the lumber company, causing the plaintiff to be damaged as result of the failure of the defendant to perform his contract. Thereupon the defendant filed his answer and cross-petition denying generally the allegations of the plaintiff's petition and specifically denying that he was to furnish the material for the work, and by way of cross-petition asking for a judgment for extra material furnished and extra labor performed in the sum of $112.25. The plaintiff filed his reply, and the issues thus formed were tried to the court and jury. The jury found for the plaintiff for the sum of $363.51 and, for the defendant for the sum of $104. The court rendered judgment for the plaintiff for the sum of $259.51, with interest, and from this judgment the defendant has perfected his appeal.

The question as to whether the contract was entered into was settled by the verdict of the jury in favor of the plaintiff. The defendant bought the materials used in the construction work of the building, had them charged to the plaintiff, and failed to pay any part of the bill, and consequently the lumber company filed a verified lien statement in the office of the court clerk to protect their interest. The plaintiff paid the entire contract price to the defendant and discharged his obligation to the defendant. The plaintiff comes into court complaining that he has been damaged to the amount of the lien. The defendant contends that until the plaintiff has paid the lien he cannot maintain this action. Out of all the facts in this case, when reduced to the simplest terms, a contract was made by which the defendant agreed to furnish the material and labor in the construction and repair of a dwelling, and by which the plaintiff agreed to pay a stipulated price and did pay that price. There was a duty on the part of the defendant to furnish the material and labor, and he failed in his duty and breached his contract when he did not pay for the materials, and as a result a lien was filed by the lumber company against the plaintiff's property. There is no way for the plaintiff to remove this incumbrance except by payment. There is no contention in the record by either of the parties that the lien is not a good and valid lien and effective as a charge upon the real estate involved. We believe that the plaintiff has been damaged by reason of the defendant's failure to discharge his duty and keep his contract, and that the plaintiff is entitled to recover the damage. We do not believe that the defendant, after he has received the full contract price for the material, can come into court and demand that the plaintiff pay again for the material before he can maintain an action for damages against the defendant. This particular question has never been passed on by this court, but we find precedent in other states which we cite with approval:

Tucson National Bank v. Gomez (Ariz.) 234 P. 560. From this case we quote:

"The former agreed to pay for all material used in a dwelling and to keep the property free from lien. This he did not do, it is alleged, and appellees could certainly have sued him for damages for breach of his contract, notwithstanding they had not yet paid the bill of the O'Malley Lumber Company."

We quote further:

"The only effect of appellees bringing suit in advance of such payment is that they would. of course, be compelled to prove the breach of contract and the amount of damage independently, instead of relying on a judgment after foreclosure of the lien."

In the case of the Empire State Surety Co. v. Lindenmeir (Colo.) 131 P. 437, the surety company made a bond to indemnify the property owner upon the condition that if the contractor should well and truly keep

456

and perform each and every one of the covenants and agreements, then the bond to be null and void. The court said on the question of payment before recovery in an action upon the surety bond that:

"The contractors failed to make these payments, liens were claimed, established and foreclosed and the property of the plaintiffs ordered to be sold in payment of judgments so rendered. The bond was security for these payments and it would be nothing short of manifest injustice to hold that the plaintiffs must have paid these judgments before they can maintain an action on the bond."

In the case of Friend v. Ralston (Wash.) 77 P. 794, the owner, Mrs. Friend, made a contract with Ralston and Royea by which they were to furnish all of the material and perform the labor in the erection of a two-story frame building. The bonding company gave their bond conditioned that the contractors would well, truly, and faithfully comply with all of the terms of the contract. The lumber company from whom the contractors bought the material for the building filed their lien statement. The same contention was made in this case as has been made in the case at bar, that is, that before the owner could maintain an action against the defendants, she would have to pay off the lien and before she could have shown that she suffered any damage. In answer to this contention the court said:

"The covenant in the building contract on the part of the contractors with Mrs. Friend is, as between them, equivalent to a direct promise to pay for materials used in the construction of the building, and a breach of the contract occurred when the contractors suffered the obligation to become a charge on her property. At least, she was entitled to treat the same as a breach. It may be true that she was not obligated to do so; that she could have waited until the lien had become fixed and determined by judgment against her property, and treated that as the breach of the bond, thus escaping the onus of establishing at the trial the validity of such lien and the amount of the indebtedness. But she was not obliged to delay action in that behalf. She could treat the failure of the contractors to keep her property free from such incumbrance as a breach of the contract. Therefore, the position of appellant's counsel that this action was prematurely brought is untenable."

The cases cited are followed and accepted in other jurisdictions. The defendant contends that to allow the plaintiff to recover and collect a judgment in this case would work an injustice because it appears that the property was mortgaged, and that

if the mortgage should be foreclosed, the plaintiff could abandon his equity and the lumber company would never collect the amount of the lien. The rights of the lumber company are not before the court. However, the jury having found from competent evidence that the defendant contracted with the plaintiff to pay for the material furnished by the lumber company and used in the building, the defendant is in no position to complain of any damage which may or might eventually ensue to the lumber company should the plaintiff recover from the defendant and then fail to pay the lumber bill, unless the defendant is himself personally liable upon the lumber bill. From the verified lien statement filed in this case, it appears that the materials were charged to the plaintiff and by the defendant acting as agent for the plaintiff.

The defendant contends that during the course of the trial the court permitted the plaintiff to introduce evidence as to the reasonable value of the labor performed in this case. It appears from the record that there was a sharp conflict in the evidence as to what the contract in the case actually was. The plaintiff contended that the defendant agreed to furnish the labor and material and the defendant contended that he was only to furnish the labor. It was a parol agreement entered into by the parties without any witnesses. We think that evidence as to the reasonable value of the services was competent in this case to advise the jury that such an agreement was probable or not. If the terms of the contract could have been established definitely, then certainly such testimony should have been excluded. The following cases have been quoted many times as the rule in such a case:

Banghart v. Hyde (Mich.) 53 N. W. 915:

"On an action to recover a balance under an oral contract of sale which the defendant denies to be due, testimony as to the value of the subject-matter of the sale is admissible as a circumstance which the jury might consider in determining which of the parties was entitled to relief."

In the case of Port Huron Engine & Thresher Co. v. Bloom (Mich.) 149 N. W. 1056, the court cited the above case with approval and said:

"Without going further into the details of this series of objections and rulings, it is sufficient to state that plaintiff, under the sharp contradictions which had arisen between witnesses, should have been allowed, especially in cross-examination, to

inquire into all the circumstances of the consecutive transactions in purchase and exchange of these engines and in that connection show any related facts which might have a logical tendency to support the probability of the story of its witnesses or weaken that of the defendant as to what the last agreement was."

In the cases of Wheeler v. F. A. Buck & Co. (Wash.) 63 P. 566, and Dimmick v. Collins (Wash.) 63 P. 1101, there are very clear and logical discussions of the law upon the question we have in this case.

We feel that the testimony was properly admitted for the purpose of showing that the contract 'as alleged was reasonable and probably was entered into.

Having considered the assignments of error and for the reasons hereinbefore expressed, we are of the opinion that the judgment of the lower court should be affirmed. And it is so ordered.

The Supreme Court acknowledges the aid of Attorneys Richard T. Pendleton, Sylvester Grim, and John E. Luttrell in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Pendleton and approved by Mr. Grim and Mr. Luttrell, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.

McNEILL, C. J., and RILEY, BUSBY, and PHELPS, JJ., concur.